NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

MONODU AJAO,

        Plaintiff,

v.

UNITED STATES OF AMERICA

        Defendant

---

Civ. No. 06-5484 (DRD)

**O P I N I O N**

Monodu Ajao
Reg. # 34329-079
N.E.O.C.C
2244 Hubbard Road
Youngstown, Ohio 44505
*Pro Se Plaintiff*

Christopher J. Christie
United States Attorney for the District of New Jersey
By Sandra L. Moser
Assistant United States Attorney
970 Broad Street
Newark, New Jersey 07102
*Attorney for Defendant United States of America*

**DEBEVOISE, Senior District Judge**

<u>I.. Procedural History</u>

On June 3, 1997, Petitioner, Monodu Ajao, pled guilty to a one count indictment charging him with conspiring to distribute more than one kilogram of heroin in violation of 21 U.S.C. § 846. The offense carried a mandatory minimum term of imprisonment of 10 years and a

maximum term of life. On February 9, 1998, acting upon a government motion for a downward departure from the Sentencing Guidelines range, the court sentenced Ajao to the mandatory minimum term of 120 months imprisonment and five years supervised release. Asserting that the government has violated an agreement with him that information he disclosed during his cooperation with the government would not be used against him, Ajao now moves for the issuance of a writ of coram nobis granting alternative forms of relief. For the reasons set forth below Ajao's petition will be denied and the action dismissed without issuance of a certificate of appealability.

## II. Background

Ajao is 59 years of age. He was convicted in June, 1986, in the United States District Court for the Southern District of Texas of conspiracy to distribute heroin. In February, 1991, after serving almost five years of the fifteen-year sentence, Mr. Ajao was released on parole into the custody of immigration authorities. One of the conditions of Ajao's parole was that he was to remain in Southern Texas until January of 2001. While on parole he absconded. In March of 1997, he was arrested in the District of New Jersey for the instant offense, conspiracy to possess with intent to distribute more than one kilogram of heroin. Ajao agreed to offer information regarding his own illegal conduct and provide the government with assistance in prosecuting his co-defendant, in exchange for a government motion for a downward departure at sentencing and a commitment by the U.S. Attorney's Office not to bring any additional charges against him premised on any of the information he provided, or for his prior heroin trafficking activities.

Upon Ajao's arrest, the Parole Commission lodged a detainer against him based on a warrant issued for his parole violation. This detainer remained with him during the course of his

incarceration. In June of 2006, upon the expiration of Ajao's New Jersey-imposed sentence, his parole revocation hearing took place. Based upon Ajao's several parole violations, including his New Jersey conviction, the Parole Commission ordered Ajao's parole revoked and imposed an additional ten years of imprisonment. Ajao claims that the Parole Commission made illegal use of the information that he provided to the government pursuant to the plea agreement, and, therefore, the agreement should either be voided or construed as precluding the Parole Commission from making any use of his 1997 conviction.

### III. Writ of Error Coram Nobis

The writ of coram nobis is a rare form of relief available to federal courts in criminal matters under the All Writs Act, 28 U.S.C. § 1651(a). Evola v. Carbone, 365 F. Supp. 2d 592 (D.N.J. 2005). It is used to attack convictions and judicial procedures that were irregular and invalid, and have continuing consequences. United States v. Stoneman, 870 F.2d 102, 105-106 (3d Cir. 1989). To qualify for the writ, the petitioner must no longer be in custody for the purposes of 28 U.S.C. § 2255, and he must establish that there was no remedy for the relief he seeks available at the time of trial. Id. at 106. There must be errors of fact "of the most fundamental kind" that "must go to the jurisdiction of the trial court, thus rendering the trial itself invalid." Id.; United States v. Morgan, 346 U.S. 502 (1954). The Supreme Court noted that "it is difficult to conceive of a situation in a federal criminal case today where [a writ of coram nobis] would be necessary or appropriate." Carlisle v. United States, 517 U.S. 416, 429. (1996) (Citation omitted).

### IV. The Proffer and Plea Agreements

Ajao argues that his guilty plea was faulty because of misrepresentations by the U.S.

Attorney's Office.  He alleges that the U.S. Attorney's Office had assured him, both during the plea negotiations and over the course of his incarceration, that the plea agreement effectively served to bar any further incarceration for his heroin trafficking activities beyond the incarceration stipulated in the agreement. (Pet'r Br. at 23).  The proffer agreement and the plea agreement are in fact very clear about the government's obligations.

Ajao was represented by counsel prior to, and at, the time he proffered evidence so that the government could decide whether to enlist his cooperation, which, if given, would make him eligible for a government downward departure motion.  The proffer agreement was entered into before Ajao made his June 2, 1997 proffer. It stated in full:

> With respect to the meeting between Jane Myers, Assistant U.S. Attorney for the District of New Jersey, and Monodu Ajao, in the presence of his counsel, Stacey DeGiralamo, Esq., and in the presence of DEA Agent Michael Vaillancourt, held on June 2, 1997 (the "meeting"), the following understandings apply:
>
> 1. Should any prosecution be brought against Monodu Ajao by the Office of the United States Attorney for the District of New Jersey ("the Office"), the Government will not offer in evidence on its direct case any statements made by Monodu Ajao at the meeting.
>
> 2. Notwithstanding paragraph one, above: (a) the Government may use information derived from the meeting directly or indirectly for the purpose of obtaining other evidence, which evidence may be used by the Office against Monodu Ajao at any prosecution of him by the Office; and (b) the Government may use the statements of Monodu Ajao and all evidence obtained directly or indirectly therefrom for the purpose of cross-examination, should Monodu Ajao testify, or for the purpose of a rebuttal case against him.

(Resp't Br. at Ex. C).

In this agreement the government undertook only, if a prosecution were brought against Ajao, not to offer as evidence on its direct case any statements made by Ajao at the meeting.  The government reserved the right to use Ajao's statements for the purpose of cross-examination should Ajao testify or for the purpose of a rebuttal case against him.

Evidently the information that Ajao provided at the proffer session was of sufficient interest to the government so that it accepted Ajao's offer of cooperation and ultimately entered into a plea agreement with him under which he agreed to plead guilty and the government agreed, if Ajao complied with the agreement, to move the sentencing judge to depart from the Sentencing Guidelines sentencing range, but not from the statutory minimum sentence. Ajao's presentence report calculated his Guideline Custody range to be 168-210 months. (Resp't Br. At Ex. B). Pertinent provisions of the plea agreement read as follows:

> This letter sets forth the full and complete agreement between your client, Monodu Ajao, and the United States Attorney for the District of New Jersey ("this Office").
>
>     . . . .
>
>     . . . If Monodu Ajao enters a guilty plea and is sentenced on this charge, and otherwise fully complies with all of the terms of this agreement, this Office will not initiate any further charges arising from Monodu Ajao's participation in the conspiracy to distribute heroin [for which he was indicted on April 2, 1997]. The scope of the protection offered in the preceding sentence is further limited to the criminal activity that Monodu Ajao has revealed to this Office as of the date of this agreement.
>
>     . . . .
>
>     . . . [T]his Office will inform the sentencing judge and the U.S. Probation Office of: (1) this agreement; (2) the nature and extent of Monodu Ajao's activities and relevant conduct with respect to this case; (3) the full nature and extent of Monodu Ajao's cooperation with this Office and when such cooperation commenced; and (4) all other information relevant to sentencing, favorable or otherwise, including information provided by Monodu Ajao before and after signing this agreement.
>
> Further, if Monodu Ajao fully complies with this agreement, and, prior to his sentencing, provides substantial assistance in the investigation or prosecution of one or more persons who have committed offenses, this Office will move the sentencing judge, pursuant to Section 5K1.1 of the Sentencing Guidelines, to depart from the otherwise applicable guideline range. The United States will not move the sentencing judge, pursuant to 18 U.S.C. § 3553 (e), to depart from any applicable statutory minimum sentence.
>
>     . . . .
>
>     . . . This Office specifically reserves the right to take any position in post-sentencing motions or proceedings and to appeal, or to oppose any appeal of, Monodu Ajao's sentence.
>
>     . . . .

> . . . This agreement is limited to the United States Attorney's Office for the District of New Jersey and cannot bind other federal, state, or local authorities. However, this Office will bring this agreement and Monodu Ajao's cooperation to the attention of other prosecuting offices, if requested by Monodu Ajao to do so.
>
> This agreement constitutes the full and complete agreement between Monodu Ajao and this Office and supersedes any previous agreement. No additional promises, agreements, or conditions have been entered into other than those set forth in this letter, and none will be entered into unless in writing and signed by the parties.
>
> . . . .
>
> . . . The quantity of heroin attributable to the defendant exceeds 10 kilograms but is less than 30 kilograms.

(Resp't Br. at Ex. D).

The agreement makes it absolutely clear that it was the full and complete agreement between Ajao and the New Jersey United States Attorney's Office. If Ajao provided substantial assistance, the obligation of that Office was to move pursuant to U.S.S.G. § 5K1.1 for a downward departure from the Sentencing Guidelines and to bring the agreement and Ajao's cooperation to the attention of other prosecuting officers, if Ajao requested it to do so.

The agreement specifically negates any undertakings that could be interpreted as the granting of general "use immunity" or "transactional immunity" which Ajao claims. See <u>Kastigar v. United States</u>, 406 U.S. 441 (1972). It provides that "[t]he agreement is limited to the United States Attorney's Office for the District of New Jersey and cannot bind other federal, state, or local authorities." (Resp't Br. at Ex. D). Although the government has not been able to locate the plea proceedings, it is the practice of the judge writing this opinion and who took the plea, to ask a defendant if the agreement constitutes the complete agreement between the defendant and the government and if the government has made any agreements or promises other than those set forth in the plea agreement. Only upon receiving satisfactory answers to those questions will the

plea proceeding go forward.

Thus there is nothing in the dealings between Ajao and the New Jersey United States Attorney's Office that precluded the Parole Commission from relying upon the New Jersey conviction when sentencing Ajao for violation of parole. The United States Attorney's Office fulfilled its obligation to bring to the attention of the Parole Commission the plea agreement and Ajao's cooperation. It did this by means of its June 19, 2006, letter to Ajao's attorney representing Ajao in the parole revocation proceedings. The letter went beyond advising of the plea agreement and Ajao's cooperation. It in effect advocated for Ajao, stating:

> . . . . the United States sought a sentence that was all-encompassing. That is to say that in requesting a substantial jail term even in light of Mr. Ajao's cooperation, it was not contemplated that the defendant would serve time in addition to that which he was sentenced. While this Office cannot dictate what another agency, state or federal, can do and the plea agreement between Mr. Ajao and this Office bound only this Office and not those parties, had it been contemplated that Mr. Ajao would serve additional time for actions stemming from what we knew when arguing for an appropriate sentence, perhaps we would have sought a lesser sentence to take into account additional time he might receive.

(Resp't Br. at Ex. D).

These considerations did not move the Parole Commission, which based its decision not only on the New Jersey conviction but also on the fact that Ajao had absconded from probation and had committed other drug offenses while absconding and before being arrested on the charges to which he pled guilty.

There is no merit to Ajao's claims. This is established by the undisputed record in the case, and, therefore, an evidentiary hearing is not required.

In the event that Ajao's petition were to be deemed a §2255 petition, the court would be

required to decide whether a certificate of appealability should issue. The undisputed record establishes that there is no merit to Ajao's claim that the government granted him any form of immunity from actions of any agency other than the United States Attorney's Office of the District of New Jersey. Consequently a certificate of appealability shall not issue.

## V. Conclusions

For the reasons set forth above Ajao's petition for the issuances of a writ of coram nobis is denied, and the petition will be dismissed with prejudice and without the issuance of a certificate of appealability.

                                       **/s/ Dickinson R. Debevoise**
                                       DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: July 16, 2007